IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

**MAY - 3 2000**

MICHAEL N. MILBY  CLERK

| | | |
|---|---|---|
| LOIS JEAN CAGE | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. C-00-093 |
| | § | |
| MADELINE E. BONNER, | § | |
| THE ESTATE OF SAMUEL BONNER | § | |
| AND REYNOLDS METALS COMPANY | § | |

## DEFENDANT REYNOLDS METALS COMPANY'S
## MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING AUTHORITIES

Now comes Defendant, Reynolds Metals Company ("Reynolds Metals"), and, pursuant to Rule 56, Fed. R. Civ. P., respectfully moves the Court to enter summary judgment in its favor on the ground that there is no genuine issue of material fact and Reynolds Metals is entitled to judgment as a matter of law. In support of this motion, Reynolds Metals shows the following:

### PRELIMINARY STATEMENT

This is an action by Plaintiff Lois Jean Cage, former wife of Samuel Bonner, to recover a community property share of Mr. Bonner's retirement benefits which accrued during his employment with Reynolds Metals. Specifically, Plaintiff alleges that pursuant to an Agreement Incident to Divorce incorporated into the 1975 divorce decree dissolving the marriage of Plaintiff and Mr. Bonner, she is entitled to a community property share of Mr. Bonner's retirement benefits based on their nineteen years of marriage.

As demonstrated below, Reynolds Metals is entitled to summary judgment on Plaintiff's claim. Although not cited in Plaintiff's Original Petition, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, governs resolution of Plaintiff's claim. Under ERISA,

**9.**

CHPDF - www.fastio.com

Plaintiff's claim for a share of Mr. Bonner's retirement benefits fails because no qualified domestic relations order ("QDRO") exists assigning a share of Mr. Bonner's retirement benefits to Plaintiff. Therefore, ERISA's anti-alienation provision defeats Plaintiff's claim to a share of those benefits. Furthermore, the survivor's annuity vested in Mr. Bonner's current wife, Madeline Bonner, on the date Mr. Bonner retired. Since no QDRO designating Plaintiff as Mr. Bonner's surviving spouse was issued prior to Mr. Bonner's retirement in 1992, Plaintiff is not entitled to any part of the survivor's annuity.

## STATEMENT OF UNDISPUTED FACTS

Samuel Bonner was employed by Reynolds Metals from on or about March 31, 1960, until his retirement on or about July 15, 1992. Dixon Aff. ¶ 2.[1] During his employment, Mr. Bonner was a participant in the Reynolds Metals Company Pension Plan for Hourly Employees (Plan 013) ("Pension Plan"), which is an ERISA-covered employee benefit plan. Dixon Aff. ¶ 2 and Ex. A. At the time of his retirement, Mr. Bonner's wife was Madeline Bonner, to whom he had been married since on or about March 15, 1983. Dixon Aff. ¶ 2 and Ex. B.

Prior to his marriage to Madeline Bonner, Mr. Bonner was married to Plaintiff from 1956 until their divorce on or about September 30, 1975. Dixon Aff. ¶ 3 and Ex. C; Plaintiff's Original Petition ¶ 5. Pursuant to an Agreement Incident to Divorce issued in 1975, the community property of Plaintiff and Mr. Bonner was divided. Plaintiff's Original Petition ¶ 5 and Agreement Incident to Divorce attached thereto. However, the Agreement Incident to Divorce makes no reference to

---

[1] Reynolds Metals' summary judgment evidence consisting of the Affidavit of Ellen M. Dixon ("Dixon Aff.") with exhibits, is attached to this motion under Tab 1.

Mr. Bonner's retirement benefits or the Pension Plan. *See* Plaintiff's Original Petition ¶ 5 and attached Agreement Incident to Divorce. A catch-all provision in the Agreement states:

> All community property which is not listed in any attached Schedule shall be owned by Wife and Husband as equal cotenants; and each party hereby conveys and assigns to the other an undivided one-half interest in any community property, owned by the granting party, which is not listed on any attached Schedule.

Agreement Incident to Divorce ¶ II.D.

Upon his retirement on or about July 15, 1992, Mr. Bonner applied for retirement benefits under the Pension Plan. Dixon Aff. ¶ 3. In connection with his request for pension benefits, Mr. Bonner submitted to Reynolds Metals the September 30, 1975 Divorce Decree dissolving the marriage of Mr. Bonner and his former wife, Lois Jean Bonner (now known as Lois Jean Cage). Dixon Aff. ¶ 3 and Ex. C. The Divorce Decree says nothing about division of the marital property; Reynolds Metals, therefore, concluded Plaintiff was not entitled to a share of Mr. Bonner's retirement benefits. Dixon Aff. ¶ 3 and Ex. C.

In August 1992, Mr. Bonner began receiving retirement benefits under the Pension Plan. Dixon Aff. ¶ 4. Mr. Bonner elected to designate Madeline Bonner, his current wife, as his surviving spouse for purposes of receiving the surviving spouse annuity. Dixon Aff. ¶ 4. Mr. Bonner subsequently died on or about February 2, 1996. Plaintiff's Original Petition ¶ 5; Dixon Aff. ¶ 4. As the surviving spouse, Madeline Bonner began receiving a survivor's annuity and continues to receive that benefit today. Dixon Aff. ¶ 4.

In or about August 1998, Plaintiff, through an attorney, submitted to Reynolds Metals a copy of the 1975 Agreement Incident to Divorce dividing the marital assets of Mr. Bonner and Plaintiff in connection with their divorce in September 1975, and requested assistance in determining her

entitlement to any retirement proceeds which may have accrued during her marriage to Mr. Bonner. Dixon Aff. ¶ 5.  After reviewing the Agreement Incident to Divorce, Reynolds Metals concluded that since the Agreement did not specifically address any division or assignment of retirement benefits from the Pension Plan, Plaintiff was not entitled to receive a share of Mr. Bonner's retirement benefits.  Dixon Aff. ¶ 5.

Plaintiff filed this action on or about January 28, 2000, seeking "her community property share of the retirement proceeds" to which Mr. Bonner was entitled.  Plaintiff's Original Petition ¶ 6. Reynolds Metals timely removed the case to this Court on the basis of ERISA preemption.

## ARGUMENT

### I.    Plaintiff's Claim for Benefits Under the Pension Plan Is Governed by ERISA.

ERISA applies to employee benefit plans, including pension plans, "established by or maintained by an employer" engaged in interstate commerce.  *Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir. 1993) (citing 29 U.S.C. § 1003(a)).  A "pension plan" is defined as:

> any plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms . . . such plan, fund or program—
>
> (i)     provides retirement income to employees, or
>
> (ii)    results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . .

29 U.S.C. § 1002(2)(A).  The Reynolds Metals Company Pension Plan for Hourly Employees (Plan 013) is an ERISA-covered plan.  Dixon Aff. ¶ 2 and Ex. A.

ERISA contains an express preemption clause which states that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan . . . ."  29

U.S.C. § 1144(a). *See also Boggs v. Boggs*, 117 S. Ct. 1754, 1761 (1997) (quoting statute). "'State

law' includes all laws, decisions, rules, regulations, or other State action having the effect of law,

of any State." 29 U.S.C. § 1144(c). Furthermore, the words "relate to" are construed in their

broadest sense. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S. Ct. 2890, 2900 (1983); *Dial

v. NFL Player Supplemental Disability Plan*, 174 F.3d 606, 610 (5th Cir. 1999); *Vega v. National

Life Ins. Servs., Inc.*, 145 F.3d 673, 675 (5th Cir. 1998), *adhered to en banc*, 188 F.3d 287 (5th Cir.

1999). "[A] state law 'relates to' an employee benefit plan, and is preempted by ERISA, 'if it has

a connection with, or reference to, such a plan.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S.

374, 384, 112 S. Ct. 2031, 2037 (1992).

A suit by a participant or beneficiary to recover benefits from a covered plan falls directly

within the civil enforcement provision of ERISA, which provides an exclusive federal cause of

action for the resolution of such disputes. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63,

107 S. Ct. 1542, 1546 (1987). *See also Vega*, 145 F.3d at 675 ("A state law claim addressing the

right to receive benefits under the terms of an ERISA plan necessarily relates to an ERISA plan" and

is subject to ERISA preemption). "In short, when beneficiaries seek to recover benefits from a plan

covered by ERISA, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132(a)(1)(B)."

*Hansen v. Continental Ins. Co.*, 940 F.2d 971, 979 (5th Cir. 1991).[2]

Here, Plaintiff has brought suit against Reynolds Metals, the Estate of Samuel Bonner (a

Pension Plan participant), and Madeline Bonner (a Pension Plan beneficiary), alleging that she is

entitled to Pension Plan benefits. This action, therefore, relates to a pension plan. *Dial*, 174 F.3d

---

[2] As a former wife of Mr. Bonner, Plaintiff is considered to be a beneficiary for purposes of
asserting her claim to a share of Mr. Bonner's benefits. *See Boggs*, 117 S. Ct. at 1763.

at 611; *Hansen*, 940 F.2d at 979.  Accordingly, Plaintiff's action to recover benefits from a covered

plan, initially filed in state court, and based on a state court order dividing the marital property of

Plaintiff and Mr. Bonner, is preempted by ERISA.  *Dial*, 174 F.3d at 611; *Hansen*, 940 F.2d at 979.

**II.     Reynolds Metals Is Entitled to Summary Judgment Because Plaintiff Has No Enforceable Right to a Share of Mr. Bonner's Retirement Benefits.**

ERISA was enacted for the purpose of protecting and ensuring "the continued well-being and

security of millions of employees and their dependents who rely upon retirement plans." *Ablamis*

*v. Roper*, 937 F.2d 1450, 1453 (9th Cir. 1991).  Thus, ERISA contains a spendthrift or anti-alienation

provision which states that benefits provided under covered retirement pension plans may not be

alienated or assigned.  29 U.S.C. § 1056(d)(1).  Notably, prior to 1984, ERISA did not clearly

delineate a spouse's interest in an employee's pension benefits.  *Ablamis*, 937 F.2d at 1453.

Congress, therefore, enacted the Retirement Equity Act of 1984 ("REA") primarily for the purpose

of safeguarding the financial security of widows and divorcees.  *Id.*

The REA creates an express statutory exception to the spendthrift provision; specifically, the

spendthrift provision does not apply to "qualified domestic relations orders" ("QDRO").  29 U.S.C.

§ 1056(d)(3)(A).  Under the REA, a court may divide the rights of spouses in pension benefits

through a QDRO and award the non-employee spouse her proper share of those benefits.  *Id.*

§ 1056(d)(3)(A).  A "domestic relations order" is

> any judgment, decree or order (including approval of a property
> settlement agreement) which—
>
> > (I) relates to the provision of child support, alimony
> > payments, or marital property rights to a spouse,
> > former spouse, child, or other dependent of a
> > participant, and

(II) is made pursuant to a state domestic relations law
(including a community property law).

29 U.S.C. § 1056(d)(3)(B)(ii)(I) and (II). A domestic relations order is a QDRO if it "creates or recognizes the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan" and meets certain additional statutory requirements. 29 U.S.C. § 1056(d)(3)(B)(i)(I). Thus, to qualify as a QDRO, the court order must also include: (1) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order; (2) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined; (3) the number of payments or period to which such order applies, and (4) each plan to which such order applies. *Id.* § 1056(d)(3)(C).

The statute also includes three general prohibitions for a QDRO—the court order may not (1) require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan, (2) require the plan to provide increased benefits (determined on the basis of actuarial value), or (3) require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order. *Id.* § 1056(d)(3)(D).

A.   **Reynolds Metals has no obligation to pay to Plaintiff a share of the pension benefits received by Mr. Bonner prior to his death.**

Plaintiff bases her claim to a share of Mr. Bonner's retirement benefits on the 1975 Agreement Incident to Divorce attached to her Original Petition. The REA provisions regarding QDROs did not become effective until January 1, 1985; however, under the REA, plan administrators may, at their discretion, treat domestic relations orders entered before that date as

QDROs. Pub. L. 98-397, § 303(a), 98 Stat. 1426, 1453 (1984). The courts have recognized a plan administrator's right to exercise its discretion by refusing to treat pre-REA orders as QDROs, especially where an order does not meet the requirements for a QDRO. *See, e.g., Samaroo v. Samaroo*, 193 F.3d 185, 187-88 & n.2 (3d Cir. 1999) (rejecting plaintiff's suggestion that pre-1985 divorce decree could be read to give plaintiff right to survivor's annuity because, among other reasons, original decree was silent on issue of survivor's rights and Congress has required QDROs to be specific in order to convey ERISA benefits, and original decree was entered before effective date of REA), *cert. denied sub nom. Samaroo v. AT&T Mgt. Pension Plan*, 2000 U.S. LEXIS 2512 (U.S. Apr. 3, 2000); *Barnes v. Maytag Corp.*, 799 F. Supp. 926, 931-32 (S.D. Ill. 1992) (declining to abide by pre-1985 divorce decree property division because it did not meet requirements to be QDRO). *See also* S. Rep. 98-575 at 23 (1984); *reprinted in* 1984 U.S.C.C.A.N. 2547, 2569 (encouraging plan administrators to treat existing domestic relations order as qualified "to the extent it is consistent with the provisions" of REA).

In this case, the Pension Plan administrator declined to treat the 1975 Agreement Incident to Divorce as a QDRO because it does not specifically address any division or assignment of retirement benefits, nor does it make any reference to the Reynolds Metals Company Pension Plan for Hourly Employees (Plan 013). Dixon Aff. ¶ 5. Plaintiff has not presented an amended Agreement Incident to Divorce or other court order which meets the requirements of a QDRO and assigns her an interest in Mr. Bonner's retirement benefits. Dixon Aff. ¶ 6. In fact, Plaintiff admits that her claim is based solely on the 1975 Agreement Incident to Divorce. *See* Plaintiff's Original Petition ¶ 5. Therefore, in the absence of a QDRO, ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), prohibits Plaintiff from receiving a share of Mr. Bonner's retirement benefits.

*Samaroo*, 193 F.3d at 190-91 (where original divorce decree was not QDRO and failed to designate former wife as alternate payee for survivor's annuity and amendment to divorce decree was made after husband's death, ERISA prohibited former wife from receiving survivor's annuity); *Dickerson v. Dickerson*, 803 F. Supp. 127, 134 (E.D. Tenn. 1992) (divorce decree awarding wife $8,000 from husband's pension plan was not QDRO under exception to ERISA's  spendthrift provision; therefore, plan had no obligation to distribute money to former wife); *Kahn v. Kahn*, 801 F. Supp. 1237, 1246 (S.D. N.Y. 1992) (former wife not entitled to joint and survivor annuity where no QDRO existed designating her as surviving spouse/alternate payee); *Barnes*, 799 F. Supp. at 931-32 (denying survivor's annuity to disabled child of participant because no QDRO existed naming child as alternate payee and, therefore, payment of benefits to child was prohibited by ERISA's general rule prohibiting alienation of benefits).  Accordingly, Reynolds Metals has no liability to Plaintiff for a share of Mr. Bonner's retirement benefits.

Furthermore, even if Plaintiff were to obtain an order from a state court amending the 1975 Agreement Incident to Divorce or issuing a new order to specifically award Plaintiff a community property share of Mr. Bonner's retirement benefits, the amended order would not qualify as a QDRO because it would require Reynolds Metals to pay increased benefits in violation of 29 U.S.C. § 1056(d)(3)(D)(ii).  Mr. Bonner retired in July 1992 and received benefits until his death in February 1996. Dixon Aff. ¶¶ 4, 6.  Upon his death, Madeline Bonner began receiving the survivor's annuity.  Dixon Aff. ¶¶ 4, 6.  A court order requiring the Pension Plan to now pay benefits to Plaintiff would have the effect of increasing the liability of the Plan; therefore, the order would not meet the requirements of a QDRO under federal law. *See Samaroo*, 193 F.3d at 189-90.

For these reasons, Reynolds Metals is entitled to summary judgment on Plaintiff's claim to a community property share of retirement benefits paid to Mr. Bonner prior to his death.

**B.  Plaintiff is not entitled to any share of the survivor's annuity because it vested in Madeline Bonner on the date Mr. Bonner retired.**

ERISA, as amended by the REA, mandates that pension benefits be provided in the form of a joint and survivor annuity. *Boggs*, 117 S. Ct. 1754, 1761 (1997) (citing 29 U.S.C. § 1055(a)). ERISA further requires that every qualified joint and survivor annuity include an annuity payable to a non-participant surviving spouse. *Boggs*, 117 S. Ct. at 1761. The survivor's annuity may not be less than 50% of the amount of the annuity which is payable during the joint lives of the participant and spouse. *Id.* (citing 29 U.S.C. § 1055(d)(1). A participating spouse is not permitted to waive the qualified joint and survivor annuity option unless the non-participating spouse consents in writing to waive the benefits. *Id.* (citing 29 U.S.C. § 1055(c)(2)); *Kahn*, 801 F. Supp. at 1241.

In this case, Mr. Bonner's surviving spouse is Madeline Bonner, to whom he was married from 1983 until his death. Dixon Aff. ¶ 2. Madeline Bonner began receiving the survivor's annuity upon Mr. Bonner's death in February 1996. Dixon Aff. ¶ 4.

ERISA provides that a former spouse may be considered the surviving spouse for purposes of receiving the survivor's annuity "to the extent provided for in any qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(F). In other words, a former spouse retains the right under ERISA to survivor benefits if a QDRO provides for such status. *Kahn*, 801 F. Supp. at 1245. As discussed above, no QDRO has been issued in this case. In the absence of a QDRO naming Plaintiff as Mr. Bonner's surviving spouse for purposes of receiving the survivor's annuity, she is not entitled to such annuity.

Furthermore, any court order obtained by Plaintiff after Mr. Bonner's retirement in July 1992 would be ineffective to designate Plaintiff as the surviving spouse because the order would not be a QDRO. A survivor's annuity vests in the surviving spouse on the date the participating spouse retires. *Rivers v. Central & South West Corp.*, 186 F.3d 681, 683-84 (5th Cir. 1999); *Hopkins v. AT&T Global Info. Solutions Co.*, 105 F.3d 153, 156-67 (4th Cir. 1997). A surviving spouse is a beneficiary under a plan, not a participant. *Hopkins*, 105 F.3d at 156. In order to be "qualified," a domestic relations order must relate to a benefit "payable with respect to a participant." *Hopkins*, 105 F.3d at 156-57 (citing 29 U.S.C. § 1056(d)(3)(B)(i)(I)). Since the survivor's annuity vested in Madeline Bonner on July 15, 1992, the date of Mr. Bonner's retirement, any domestic relations order with regard to survivor's annuity benefits obtained by Plaintiff after July 15, 1992, would relate to a benefit payable to a beneficiary, not a participant, and thus cannot constitute a QDRO. *Hopkins*, 105 F.3d at 156-57. *See also Rivers*, 186 F.3d at 683 (adopting reasoning in *Hopkins*). Accordingly, Plaintiff is not entitled to any share of the survivor's annuity being paid to Madeline Bonner, and Reynolds Metals has no obligation to pay any such benefit to Plaintiff.

## CONCLUSION

For the foregoing reasons, Reynolds Metals submits that there is no genuine issue of material fact with respect to Plaintiff's claims; therefore, it is entitled to summary judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Reynolds Metals prays that it be granted summary judgment against Plaintiff with respect to all of the claims in Plaintiff's Original Petition, and that Reynolds Metals be awarded such other relief, both legal and equitable, to which it may be justly entitled.

Respectfully submitted,

Of Counsel:
Bracewell & Patterson, L.L.P.

Robert S. Nichols
Attorney-in-Charge
Southern District of Texas Bar No. 17118
State Bar No. 15006400
2000 One Shoreline Plaza-South Tower
800 North Shoreline Boulevard
Corpus Christi, Texas 78401-3700
Telephone: (361) 882-6644
Telecopier: (361) 882-6659

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant Reynolds Metals Company's Motion for Summary Judgment With Supporting Authorities was forwarded to all parties as shown below, via certified mail, return receipt requested, on this 3rd day of May, 2000.

Katharine Henkel
Attorney at Law
1750 Santa Fe
Corpus Christi, Texas 78404

Certified Mail, Return Receipt
Requested # Z 227 979 388

Madeline E. Bonner
2210 Siboney Street
Beeville, Texas 78102

Certified Mail, Return Receipt
Requested #Z 227 979 394

Robert S. Nichols

1

CVisPDF – www.fevisa.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LOIS JEAN CAGE | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. C-00-093 |
| | § | |
| MADELINE E. BONNER, | § | |
| THE ESTATE OF SAMUEL BONNER | § | |
| AND REYNOLDS METALS COMPANY | § | |

**AFFIDAVIT OF ELLEN M. DIXON**
**IN SUPPORT OF DEFENDANT REYNOLDS METALS'**
**MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| STATE OF VIRGINIA | § |
| | § |
| COUNTY OF HENRICO | § |

Ellen M. Dixon, after having been sworn, did state the following:

1.      My name is Ellen M. Dixon and I hold the position of Administrator, Hourly

Pensions of Reynolds Metals Company.  I have held this position since 1998.  I am over 18 years of

age and have never been declared legally incompetent.  In my position as Administrator, Hourly

Pensions of Reynolds Metals Company, I have knowledge of the following facts, based either on

personal knowledge or my review of Reynolds Metals' business record.

2.      Samuel Bonner was employed by Reynolds Metals from on or about March 31,

1960, until his retirement on or about July 15, 1992.  During his employment, Mr. Bonner was a

participant in the Reynolds Metals Company Pension Plan for Hourly Employees (Plan 013)

("Pension Plan"), which is an employee benefit plan governed by the Employee Retirement Income

Security Act ("ERISA").  A copy of the Pension Plan Summary is attached hereto as Exhibit A.  At

the time of his retirement, Mr. Bonner's wife was Madeline Bonner, to whom he had been married

since on or about March 15, 1983.  A copy of the marriage license submitted to Reynolds Metals by

Madeline Bonner is attached hereto as Exhibit B.

3.      Upon his retirement on or about July 15, 1992, Mr. Bonner applied for retirement benefits under the Pension Plan.  In connection with his request for pension benefits, Mr. Bonner submitted to Reynolds Metals the September 30, 1975 Divorce Decree dissolving the marriage of Mr. Bonner and his former wife, Lois Jean Bonner (now known as Lois Jean Cage).  A copy of the 1975 Divorce Decree is attached hereto as Exhibit C.  The Divorce Decree says nothing about division of the marital property; Reynolds Metals, therefore, concluded that Ms. Cage was not entitled to receive a share of Mr. Bonner's retirement benefits.

4.      In August 1992, Mr. Bonner began receiving retirement benefits under the Pension Plan.  Mr. Bonner elected to designate Madeline Bonner, his current wife, as his surviving spouse for purposes of receiving the surviving spouse annuity.  Mr. Bonner subsequently died on or about February 2,1996.  As the surviving spouse, Madeline Bonner began receiving the survivor's annuity and continues to receive that benefit today.

5.      In or about August 1998, Ms. Cage, through an attorney, submitted to Reynolds Metals a copy of the 1975 Agreement Incident to Divorce dividing the marital assets of Mr. Bonner and Ms. Cage in connection with their divorce in September 1975 and requested assistance in determining her entitlement to any retirement proceeds which may have accumulated during her marriage to Mr. Bonner.  After reviewing the Agreement Incident to Divorce, Reynolds Metals concluded that since the Agreement does not specifically address any division or assignment of retirement benefits from the Pension Plan, Ms. Cage was not entitled to receive a share of Mr. Bonner's retirement benefits.

6.      Ms. Cage has not presented to Reynolds Metals an amended Agreement Incident to Divorce or other court order which meets the requirements of a qualified domestic relations order

-2-

and assigns to her an interest in Mr. Bonner's retirement benefits or names her as Mr. Bonner's surviving spouse for purposes of receiving the survivor's annuity under the Pension Plan. Furthermore, even if Ms. Cage were to obtain a court order assigning her a share of Mr. Bonner's retirement benefits, such an order would have the effect of increasing the liability of the Pension Plan because the Pension Plan paid Mr. Bonner the benefits to which he was entitled under the Pension Plan up until his death. After he died, the only benefit available is the survivor's annuity, which is being paid to Madeline Bonner.

I have read the foregoing affidavit and swear that it is true and correct.

Ellen M. Dixon

SUBSCRIBED AND SWORN TO BY Ellen M. Dixon before me, the undersigned authority, on this the 24ᵗʰ day of April , 2000, in Richmond, Virginia.

NOTARY PUBLIC, STATE OF VIRGINIA
My Commission Expires: 2-28-2003

-3-

A

CutePDF - www.fasiso.com

# Your Pension Plan

Plan Highlights ............................................................. 3

When You Are Eligible For A Pension .......................... 6
   65–5 Retirement—Normal Retirement ............................... 6
   62–10 Retirement ............................................................... 6
   60–10 Retirement ............................................................... 6
   30–Year Retirement ............................................................ 6
   Disability Pension ............................................................... 6
   Special Pensions ................................................................. 7
      70–80 Special Pension ................................................. 7
      Rule Of 65 Pension ...................................................... 7
      55–10 Special Pension ................................................. 7
   Vested Pension ................................................................... 8

How Much You Can Receive ...................................... 8
   Basic Benefits .................................................................... 8
   Special Retirement Payment .............................................. 9
      Rollovers ...................................................................... 9
   Supplemental Benefits ....................................................... 9
   Graded Minimum Benefit Supplement .............................. 10

Your Total Retirement Income .................................. 12
   Estimates Of Monthly Income ............................................ 13

Surviving Spouse Pensions ........................................ 14
   Death Before Retirement .................................................. 14
      While Actively Employed .............................................. 14
      After Termination – Vested ........................................... 14
   Death After Retirement .................................................... 15

Other Important Facts ............................................. 16
   Employees Covered .......................................................... 16
   How Your Service Is Counted ............................................ 16
   Applying For Benefits ........................................................ 17
   IRS Approval .................................................................... 18
   Your Right to Benefits ....................................................... 18
   Changing Or Ending The Plan ........................................... 18
   Plan Insurance .................................................................. 18

**Pension Plan Facts** ...................................................... **20**

**Pension Plan Definitions** ........................................... **22**

**The Complete Pension Plan Text** .................................. **23**

Section I - Definitions ....................................................24

Section II - Effective Date .............................................25

Section III - Eligibility ...................................................25

Section IV - Amount of Pensions ..................................27

Section V - Surviving Spouse Pension ...........................31

Section VI - Determination of Service .........................33

Section VII - Administration ..........................................37

Section VIII - Appeals Procedure .................................37

Section IX - Funding ......................................................37

Section X - Vesting .........................................................37

Section XI - Miscellaneous ............................................38

Section XII .......................................................................39

Section XIII ......................................................................39

Section XIV .....................................................................39

Section XV ......................................................................40

Table II—Percentages For Deferred Vested Retirement Pensions ...41

**Appendix A** ................................................................ **42**

Special Provisions Relating To Rule Of 65 Retirement ...............42

I. Definition Of Suitable Long-Term Employment ..................42

II. Offer And Acceptance Of SLTE .........................................42

Table III—Suitable Long-Term Employment Locations ...........45

**Appendix B** ................................................................ **47**

Special Rules Relating To Certain Breaks In Pension Service .......47

# Plan Highlights

Under agreements between the Company and the Union, this Plan provides benefits that are among the best of those negotiated with any major industrial company in the U.S. Eligibility for Plan participation is described under *"Employees Covered."* As you will see in the pages that follow, the Plan can pay you a pension at retirement any time from age 60 on (earlier in some cases), or in the event of disability, termination before retirement, or after extended layoff in case of plant shutdown.

The Plan provisions summarized under this tab are effective June 1, 1993, unless otherwise noted. Listed below are a number of improvements and the dates they take effect. These improvements are discussed in detail in the following summary of your Plan benefits.

- Pension factors increased effective June 1, 1992, and again on June 1, 1993.

- Disability retirement minimum pension increased to $400 for all retirements on or after June 1, 1993.

- Effective January 1, 1994, a graded minimum benefit supplement is available to any retiring Participant who has reached age 55 and has at least 30 years of service.

- "Maximum Benefit" provision removed.

The following chart highlights the main Plan features. Keep in mind that the chart is intended as a brief summary of how the Plan works. Actual Plan provisions are subject to the terms and conditions of the formal Plan documents. For added details, be sure to check the sections referred to in the chart as well as the complete Plan text included at the end of this tab.

*This is a summary of the Pension Plan in effect as of June 1, 1993, as it applies to hourly Employees of the Company represented by the Union at the plants listed under the heading, "Employees Covered." The Plan also covers certain other employees of the Company.*

*Every attempt has been made to ensure that this summary plan description (SPD) accurately reflects the provisions of the Plan document. However, if the information contained in the SPD disagrees with the Plan document, the provisions of the Plan document will control.*

**In this situation . . .**

| | |
|---|---|
| **Retirement** | Age 65 or older with at least 5 years of service *(65-5 Retirement)*. |
| | Age 62-64 with at least 10 years of service *(62-10 Retirement)*. |
| | Age 60-61 with at least 10 years of service *(60-10 Retirement)*. |
| | Any age with at least 30 years of service *(30-year Retirement)*. |
| | Age 55-62 with at least 30 years of service *(30-year Retirement)*. |
| **Permanent Disability** | Any age with at least 10 years of service, if "permanently disabled" *(Disability Pension)*. |
| **Disability** | Age 55 or older with at least 10 years of service *(55-10 Special Pension)*. |
| | Age 55 or older with at least 10 years of service, if age plus service equals 70 or more *(70-80 Special Pension)*. |
| | Any age with at least 10 years of service, if age plus service equals 80 or more *(70-80 Special Pension)*. |
| | Any age with at least 20 years of service, if age plus service equals 65 or more *(Rule of 65 Pension)*. |
| **Layoff Or Permanent Shutdown** | Age 55 or older with at least 10 years of service *(55-10 Special Pension)*. |
| | Age 55 or older with at least 10 years of service, if age plus service equals 70 or more *(70-80 Special Pension)*. |
| | Any age with at least 10 years of service, if age plus service equals 80 or more *(70-80 Special Pension)*. |
| | Any age with at least 20 years of service, if age plus service equals 65 or more *(Rule of 65 Pension)*. |
| **Leaving Reynolds For Any Other Reason** | Any age with at least 5 years of service *(Vested Pension)*. |

4

# You may be eligible for . . .

| Full Basic Benefits immediately | Reduced Basic Benefits as early as 60 or full Basic Benefits at 62 | Special Retirement Payment | Supplemental Benefits until 62 or Social Security starts | Graded Minimum Benefit Supplement until 62 and full Basic Benefit thereafter | Social Security Benefits |
|---|---|---|---|---|---|
| X | | X | | | Full retirement benefit immediately |
| X | | X | | | |
| | X | X | | | Reduced retirement benefit as early as 62 or full benefit at 65 |
| X | | X | | | |
| X | | X | | X | |
| X | | | X | | |
| X | | X | | | If you qualify, disability benefits after 5 months of disability, otherwise reduced retirement benefit as early as 62 or full retirement benefit at 65 |
| X | | X | X | | |
| X | | X | X | | |
| X | | X | X | | |
| X | | X | | | |
| X | | X | X | | Reduced retirement benefit as early as 62 or full benefit at 65 |
| X | | X | X | | |
| X | | X | X | | |
| | X | | | | Reduced retirement benefit as early as 62 or full benefit at 65 |

# When You Are Eligible For A Pension

## 65-5 Retirement—Normal Retirement

At age 65 or later, normal retirement may be taken at any time as long as you have at least five years of service.

Under the 65-5 retirement rules, you will be eligible to receive:

- a Special Retirement Payment the month after you retire, and

- *full* Basic Benefits—based on your service to retirement—starting the fourth month after you retire.

The 65-5 retirement is the only form of retirement (other than disability retirement with a Social Security disability benefit) under which you may also be eligible for full unreduced Social Security retirement benefits as soon as you retire. See *"Your Total Retirement Income"* for details.

## 62-10 Retirement

Between ages 62 and 65, you can elect to retire if you have 10 or more years of service. In this case, you are eligible for both the Special Retirement Payment and *full* Basic Benefits—based on your service to retirement—when you retire. However, your Social Security will be reduced by about 7% per year if you begin receiving benefits early. See *"Your Total Retirement Income"* for details.

## 60-10 Retirement

You can retire between ages 60 and 62 if you have at least 10 years of service. In this situation, you have two choices. You can elect to receive:

- a Special Retirement Payment the month following your retirement, and

- *reduced* Basic Benefits starting the fourth month after you retire. In this case the Basic Benefit earned as of your retirement date will be reduced by ¹/₂ of 1% for each month payments are made prior to your 62nd birthday. If your pension payments start at age 61¹/₂, for example, your Basic Benefit would be reduced by 3% (1/2 of 1% times 6 months).

**OR**

- a Special Retirement Payment the month following your 62nd birthday, *and*

- *full* Basic Benefits—based on your service to retirement —starting the fourth month following your 62nd birthday.

Either way, reduced monthly Social Security benefits are not payable until age 62.

## 30-Year Retirement

You can retire any time after you complete 30 years of service, regardless of your age. And, under the 30–year retirement rules, you will be eligible to receive:

- a Special Retirement Payment the month after you retire, and

- *full* Basic Benefits—based on your service to retirement—starting the fourth month after you retire, and

- a graded minimum benefit supplement, if you retire on or after June 1, 1992, and you are between the ages of 55 and 62 when you retire.

## Disability Pension

In the event you become disabled, you may be eligible for a pension if:

- you have at least 10 years of service,

- medical evidence indicates the disability is permanent and will prevent you from engaging in any bargaining unit occupation at your location and you are not otherwise employed by the Company, and

- the disability is determined to have existed prior to any break in or termination of pension service.

In this situation, you qualify for a disability pension after you have been disabled for five consecutive months. Once you have met the qualifications, you can elect when you want to retire on disability pension, taking various considerations into account. For example, if you are still eligible for disability benefits under the Reynolds Employee Group Benefit Plan, at that time, you can elect to defer your disability retirement date—and disability pension payments—until after group insurance benefits stop, or you can waive your disability payments and start your pension.

The *amount* of monthly pension payable depends on whether or not you are also eligible for Social Security disability benefits:

*If you are eligible for Social Security disability payments,* you will receive *full* Basic Benefits—based on your service to the date of your disability retirement—starting the month after you retire.

*If you are not eligible for Social Security disability payments,* you will receive:

- *full* Basic Benefits—based on service to retirement for disability with a minimum benefit of $250 a month ($400 a month for all disability retirements on or after June 1, 1993)—starting the month following retirement, plus

- a supplemental benefit of $400 a month, starting the month following disability retirement and continuing to age 62, when Social Security retirement benefits become payable, unless they stop earlier because you become eligible for Social Security disability benefits.

Disability pensions are not payable if disability results from participating in a criminal act, habitual drunkenness, addiction to narcotics, intentionally self-inflicted injury or if disability occurs during military service and prevents your return to work. Also, prior to age 62, medical evidence of your continuing disability may be required from time to time.

## Special Pensions

In addition to regular and disability retirement, there are other times—often resulting from causes beyond your control or the Company's—when immediate pensions can be paid just as though you were retiring at age 62 or later.

Briefly, here's how the three *special early retirement pensions* work.

### 70–80 Special Pension

There are two ways to qualify for the age and service requirements for this special pension:

- at age 55 or older with at least 10 years of service, if your age plus years of service add up to 70 or more—for example, age 57 plus 13 years of service, or

- at any age with at least 10 years of service, if your age plus years of service add up to 80 or more.

If you meet either of these age and service requirements, you are eligible for a 70-80 Special Pension in the following situations:

- if you are displaced from your department as a result of a permanent shutdown of a plant or department, or

- if you have been absent because of other layoff, injury or illness for two years.

If you qualify, you will be eligible for:
- a Special Retirement Payment the month after you retire,

- *full* Basic Benefits—based on service to retirement—starting the fourth month following retirement, *and*

- a supplemental benefit of $400 per month, starting the fourth month following retirement and continuing to age 62 (or until you are eligible for Social Security disability benefits, if earlier).

## Rule Of 65 Pension

As added protection for long-service employees under age 55, the Rule of 65 Pension applies in the following situations if you have at least 20 years of service as of your Last Day Worked, and your age plus years of service add up to 65 or more:

- if you are absent because of layoff, sickness, or accident for two years, and the Company fails to provide you with suitable long-term employment, or

- if you are laid off for less than two years due to an energy-related plant or department shutdown, and the Company fails to provide you with suitable long-term employment.

You can find definitions of suitable long-term employment and provisions relating to the offer and acceptance of suitable long-term employment in *"Appendix A"* of the Plan text.

Benefits payable to Employees eligible for a Rule of 65 Pension are the same as those described above for 70-80 special pensions, with one important exception. The $400-a-month supplemental benefit otherwise payable to rule of 65 retirees will be reduced by one-half of any earned income over $5,500 a year. More information about how this limitation might apply in a particular situation is available from your Human Resources Office.

## 55–10 Special Pension

If you are at least age 55 and have 10 or more years of service—but don't meet the age and service requirements for either the 70-80 or Rule of 65 Pensions—you could still qualify for an immediate pension:

- if you are laid off as a result of a permanent shutdown of a plant or department, or

- after you have been absent for three consecutive years due to layoff, sickness or accident.

In this situation, you would be eligible for:
- a Special Retirement Payment the month after you retire, and

- *full* Basic Benefits—based on your service to retirement—starting the fourth month after you retire.

No benefits are payable under any of the three special pensions until after any disability benefits under the Reynolds Employee Group Benefit Plan stop either because they have been exhausted or you have waived any remaining benefits. Also, if you qualify for a 70-80 Special Pension because of a permanent shutdown and you accept employment in another plant or department, you will still retain your special pension rights for 12 months after transfer. Retention of rights to a Rule of 65Pension depends on the nature of long-term employment offered by the Company and other related factors. (See *"Appendix A"* of the Plan text for more details.)

## Vested Pension

In the event you leave the Company at any time *after* completing five years of service you are *vested*. This means that even if you leave before retirement, you still take with you the right to a Reynolds pension later on. If you are absent because of layoff or physical disability, you may continue to accrue service for up to two more years, and this service will count toward the five years you need for a vested pension. See *"How Your Service Is Counted"* for more details.

If you leave the Company *before* you have five years of service, you will *not* be entitled to any benefits from the Plan.

Vested pensions are payable in one of two ways:

• *full* Basic Benefits—based on your service to termination—starting at age 62

**OR**

• *reduced* Basic Benefits starting any time after you reach age 60. In this case, your full Basic Benefit would be reduced by 1/2 of 1% for each month payments are made before your 62nd birthday.

# How Much You Can Receive

## Basic Benefits

Your *monthly* Basic Benefit under the Plan equals—

**Your Years Of Service**

*times*

**A Pension Factor Determined By Your**
*Retirement Class*

Here's how it works.

Your Retirement Class is determined by the highest wage grade (or the highest hourly wage rate, adjusted for general wage changes) at which you worked 1,000 hours or more in any 12 consecutive months during the 120 months just before your retirement.

If you did not work 1,000 hours in a single wage grade (or *adjusted* hourly wage rate) in any 12 consecutive months during those 120 months, then the wage grade (or *adjusted* hourly wage rate) in which you worked the highest number of hours will be your Retirement Class. For the purpose of determining your Retirement Class, hours for which you receive vacation pay are counted the same way as hours worked.

Your Retirement Class is then used to determine your *pension factor*—the monthly pension to be credited for each year of service—using the table below. These pension factors apply to you if you retire on or after June 1, 1992.

> **Example:** Suppose you retire in January 1993, with 30 years of service and a Retirement Class D. Your monthly Basic Benefit of $787.50 ($26.25 x 30) is payable until May 31, 1993, when it is recalculated. Starting June 1993, your new monthly Basic Benefit is $847.50 ($28.25 x 30).

| If Your Retirement Class (Wage Grade) Is: | If You Retire On or After June 1, 1992, Your Pension Factor Per Year Of Service Is: | |
|---|---|---|
| | For Payments Due From June 1, 1992 Through May 31, 1993 | For Payments Due After May 31, 1993 |
| A ( 1– 4) | $24.25 | $26.25 |
| B ( 5– 8) | 24.90 | 26.90 |
| C ( 9–12) | 25.55 | 27.55 |
| D (13–16) | 26.25 | 28.25 |
| E (17–20) | 26.90 | 28.90 |
| F (21–24) | 27.55 | 29.55 |
| G (25 & above) | 28.25 | 30.25 |

Full Basic Benefits as described above are payable when you retire under any of the various retirement rules, with these three exceptions:

1) Under the rules for 60-10 retirement and vested pensions, full Basic Benefits are not payable until age 62. In these two cases, full Basic Benefits will be reduced by $1/2$ of 1% for each month (6% for each year) payments are made after age 60 but prior to age 62.

2) If you are married when your Reynolds pension starts and your Basic Benefit is paid in the form of a surviving spouse benefit, your monthly Basic Benefit will be reduced by 5% to provide continuing income to your spouse after your death. For details, see *"Surviving Spouse Pensions."*

3) Basic Benefits paid under a disability pension will stop if the Employee recovers before age 62.

## Special Retirement Payment

This is a lump sum payment you receive in the month after you retire, except on permanent disability retirements or deferred vested pensions. The amount of this one time payment equals:

**10 Weeks Of *Vacation Pay***

***plus***

**The Number of Weeks Of Regular Vacation Pay You Are Entitled To For Which You Have Not Received Pay In The Year In Which You Retire**

Slightly different rules may apply if you are not entitled to a vacation in the year you retire.

### Rollovers

If you receive a special retirement payment (SRP), you may be able to exclude the distribution from your taxable gross income if you roll it over to an individual retirement account (IRA) or the eligible pension plan of another employer. You have two options:

• You may elect a direct rollover from this Plan to an IRA or eligible pension plan that accepts rollovers. A check will be issued to you in the name of the IRA or pension plan, and it is your responsibility to deliver the rollover.

**OR**

• You may elect to have payment from the Plan made to you and you make the rollover. In this case, a check is issued in your name, and you must make the rollover within 60 days of the date you receive the distribution or it will be taxed in the current year. In addition, 20% of your SRP will be withheld automatically for Federal Income Tax. You may still roll over 100 percent of your SRP, but you must use other funds to replace the 20% withheld.

See your Human Resources Office for more information on rollovers and the appropriate forms.

## Supplemental Benefits

These are designed to provide added monthly income in certain situations where retirement takes place before Social Security benefits become payable.

Supplemental benefits of $400 a month are payable if you qualify for:

• 70-80 Pension, or

• Rule of 65 Pension, or

• disability pension,

*and* you are not eligible for Social Security disability benefits. As discussed earlier, supplemental benefits paid under Rule of 65 Pensions may be reduced if you have earned income.

Supplemental benefits continue until 62—the age at which reduced Social Security retirement benefits can begin. Supplemental benefits will stop earlier if you qualify for Social Security disability benefits or you recover from a disability before age 62.

# Graded Minimum Benefit Supplement

This supplemental pension benefit is payable if you retire on or after June 1, 1992, between the ages of 55 and 62 with at least 30 years of service. The monthly benefit amount is based on your Retirement Class/Wage Grade at retirement in accordance with the following table.

| Retirement Class (Wage Grade) | Graded Minimum Monthly Benefit |
|---|---|
| A ( 1– 4) | $1,070 |
| B ( 5– 8) | 1,100 |
| C ( 9–12) | 1,130 |
| D (13–16) | 1,160 |
| E (17–20) | 1,190 |
| F (21–24) | 1,220 |
| G (25 & above) | 1,250 |

Your additional benefit supplement is determined by subtracting the monthly amount of your full Basic Benefit from the applicable graded minimum monthly benefit amount as shown in the above table. The supplement amount payable in a calendar year is reduced by one-half of any *earned income* over $10,000 you receive for the year. More information on how this limitation might apply in a particular situation is available from your Human Resources Office.

When you reach age 62, your additional benefit supplement stops. Thereafter, your monthly pension equals your Basic Benefit.

---

**Example:** Suppose you retire at age 58 with 30 years of service and a Retirement Class G. Your pension amounts payable until age 62 would be:

| | |
|---|---|
| Full Monthly Basic Benefit ($30.25 x 30) | $   907.50 |
| *Plus* | |
| Benefit Supplement Amount ($1,250 – 907.50) | +   342.50 |
| *Equals* | |
| Total Monthly Pension | $1,250.00 |

At age 62, your benefit supplement would end, giving you a monthly pension amount of $907.50.

---

THIS PAGE LEFT BLANK INTENTIONALLY

# Your Total Retirement Income

When you retire, your retirement income will come from two sources—your Reynolds Pension Plan and Social Security. The Company not only pays the full cost of your Pension Plan benefits, but also helps to pay for your Social Security pension by matching the amount of Social Security taxes you pay each year.

Social Security benefits are entirely in addition to your pension. When full Social Security retirement benefits are first available to you depends on when you were born. They are available at age 65 if you were born before 1938, age 67 if you were born in 1960 or later, and at increasing ages between 65 and 67 if you were born between 1938 and 1960.

If you prefer, Social Security can start as early as age 62, but the amount payable will be less than if you wait until you are eligible for full Social Security benefits—about seven percent less if payments start one year early, 13 percent less if they start two years early and 20 percent less if they start three years early.

Your husband or wife age 62 or older can also receive Social Security retirement benefits in addition to yours. Depending on your spouse's age, these will amount to between 32 percent and 50 percent of your individual benefit.

The following charts give you an idea of how benefits from both sources—the Pension Plan and Social Security—combine to provide your total retirement income. The first shows estimated combined income if you keep working until 65. The second chart illustrates pension and Social Security benefits starting three years earlier—at age 62.

In reviewing the charts, keep in mind that the Social Security amounts shown are only *estimates* based on average earnings histories, and assuming benefits begin in 1995. Your actual Social Security benefit will depend on your own earnings levels over the years and the law in effect when you retire, so it may be higher or lower than the amount shown. Also, only your own Social Security benefits are shown. Any benefits payable for your spouse are extra.

And remember that Social Security benefits are not paid automatically. You must apply for them at your local Social Security office, generally from two to three months before you want benefits to begin.

**12**

# Estimates Of Monthly Income

## For Retirement At Age 65

### Years Of Benefit Service

| Retirement Class | 20 | | | 25 | | | 30 | | | 35 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Reynolds Pension | Social Security | Total | Reynolds Pension | Social Security | Total | Reynolds Pension | Social Security | Total | Reynolds Pension | Social Security | Total |
| A ( 1– 4) | $ 525 | $ 800 | $1,325 | $ 656 | $ 800 | $1,456 | $ 788 | $ 800 | $1,588 | $ 919 | $ 800 | $1,719 |
| B ( 5– 8) | $ 538 | $ 820 | $1,358 | $ 673 | $ 320 | $1,493 | $ 807 | $ 820 | $1,627 | $ 942 | $ 820 | $1,762 |
| C ( 9–12) | $ 551 | $ 844 | $1,395 | $ 689 | $ 844 | $1,533 | $ 827 | $ 844 | $1,671 | $ 964 | $ 844 | $1,808 |
| D (13–16) | $ 565 | $ 868 | $1,433 | $ 706 | $ 868 | $1,574 | $ 848 | $ 868 | $1,716 | $ 989 | $ 868 | $1,857 |
| E (17–20) | $ 578 | $ 891 | $1,469 | $ 723 | $ 891 | $1,614 | $ 867 | $ 891 | $1,758 | $1,012 | $ 891 | $1,903 |
| F (21–24) | $ 591 | $ 911 | $1,502 | $ 739 | $ 911 | $1,650 | $ 887 | $ 911 | $1,798 | $1,034 | $ 911 | $1,945 |
| G(25 & above) | $ 605 | $ 935 | $1,540 | $ 756 | $ 935 | $1,691 | $ 908 | $ 935 | $1,843 | $1,059 | $ 935 | $1,994 |

## For Retirement At Age 62

### Years Of Benefit Service

| Retirement Class | 17 | | | 22 | | | 27 | | | 32 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Reynolds Pension | Social Security | Total | Reynolds Pension | Social Security | Total | Reynolds Pension | Social Security | Total | Reynolds Pension | Social Security | Total |
| A ( 1– 4) | $ 446 | $ 648 | $1,094 | $ 578 | $ 648 | $1,226 | $ 709 | $ 648 | $1,357 | $ 840 | $ 648 | $1,488 |
| B ( 5– 8) | $ 457 | $ 664 | $1,121 | $ 592 | $ 664 | $1,256 | $ 726 | $ 664 | $1,390 | $ 861 | $ 664 | $1,525 |
| C ( 9–12) | $ 468 | $ 684 | $1,152 | $ 606 | $ 684 | $1,290 | $ 744 | $ 684 | $1,428 | $ 882 | $ 684 | $1,566 |
| D (13–16) | $ 480 | $ 702 | $1,182 | $ 622 | $ 702 | $1,324 | $ 763 | $ 702 | $1,465 | $ 904 | $ 702 | $1,606 |
| E (17–20) | $ 491 | $ 721 | $1,212 | $ 636 | $ 721 | $1,357 | $ 780 | $ 721 | $1,501 | $ 925 | $ 721 | $1,646 |
| F (21–24) | $ 502 | $ 738 | $1,240 | $ 650 | $ 738 | $1,388 | $ 798 | $ 738 | $2,536 | $ 946 | $ 738 | $1,684 |
| G(25 & above) | $ 514 | $ 757 | $1,271 | $ 666 | $ 757 | $1,423 | $ 817 | $ 757 | $1,574 | $ 968 | $ 757 | $1,725 |

Pension Plan amounts shown are based on the pension factors effective June 1, 1993.

# Surviving Spouse Pensions

A lifetime monthly pension may be payable to your husband or wife following your death either before or after retirement. The provisions described below apply to you if you were an Employee of the Company after August 22, 1984.

## Death Before Retirement

### While Actively Employed

**50% Basic Benefit.** In the event of your death while you are still actively employed by the Company, your spouse can receive a pension if you have completed five years of service and were married to your spouse for at least one year prior to your death.

Specifically, your spouse's pension would be 50% of your monthly Basic Benefit based on your service at death but without any reduction for being under age 62. Benefits will commence in the month following your death.

**50% Graded Minimum Benefit Supplement.** Effective January 1, 1994, your spouse is entitled to 50% of your graded minimum benefit supplement in addition to 50% of your monthly Basic Benefit as described above if:

- you die while actively employed between the ages of 55 and 62; and
- you had at least 30 years of service at the time of your death; and
- you were married to your spouse at least one year at the time of your death.

Graded minimum benefit supplement payments stop the month following the month in which your 62nd birthday otherwise would have occurred. The 50% Basic Benefit, however, will continue for your spouse's lifetime.

### After Termination – Vested

In the event of your death after you terminate employment but before you start receiving benefits, your spouse can receive a benefit if you have vested rights under the Plan and were married to your spouse for at least one year prior to your death. In this case:

a) If you are eligible to begin receiving a benefit at the time of your death (that is, you have reached at least age 60), your spouse will receive a monthly pension for life equal to 50% of the benefit you would have been eligible for had you elected to begin receiving your benefit on the day before your death and elected a surviv-

ing spouse pension. Benefits will commence in the month following your death, unless your spouse elects a later date.

b) If you are under age 60 at the time of your death, your spouse will receive 50% of the benefit you would have been eligible for had you terminated your employment on the date of your death, survived until you reached age 60, and then died immediately after electing a surviving spouse pension. Benefits in this instance, however, will be paid beginning in the month following the date you would have turned age 60, unless your spouse elects a later date.

If you left the Company after completing five years of service and are married, you must pay for the cost of this coverage as described below. To waive this coverage, you must have your spouse's written consent, witnessed by a representative of the Plan or notary public.

Your Plan benefit at death or retirement will be permanently reduced to pay for the cost of the pre-retirement spouse's benefit protection. The amount of the reduction varies with your age during the period you are covered between termination of employment and the earlier of the date you start receiving benefits or die. The reductions are shown in the following table.

| If pre-retirement spouse's benefit coverage is in effect at age | Your Plan benefit for each year of coverage will be reduced by this percentage |
|---|---|
| Under 35 | No Reduction |
| 35 – 44 | .1% |
| 45 – 54 | .2% |
| 55 – 64 | .5% |

Thus, if coverage begins at age 35 and remains in effect until you start to receive benefits at age 60, your benefit will be reduced by 5.5%.

| Age while covered | Amount of reduction |
|---|---|
| 35 – 44 | .1% x 10 years = 1.0% |
| 45 – 54 | .2% x 10 years = 2.0% |
| 55 – 59 | .5% x  5 years = 2.5% |
| | 5.5% |

In this example, your benefit at age 60 will equal 94.5% (100% – 5.5%) of the benefit you would have received if pre-retirement spouse's benefit protection had not been in effect. There will be additional reductions if you receive benefits before age 62 or elect a surviving spouse pension at retirement.

14

Spouse's coverage for both active and terminated vested Participants ends when you cease to have a spouse; however, coverage will automatically be reinstated if you remarry. This is true for vested Participants even if you leave the Company before you retire.

## Death After Retirement

If you retire from active employment, the surviving spouse pension is paid automatically if you and your spouse were married at your retirement—unless you specifically request in writing, and obtain your spouse's written consent, to reject this benefit when applying for your own pension to begin.

If you do not reject this protection, your monthly Basic Benefit will be reduced by 5% to provide your surviving spouse with lifetime pension income after your death. The amount of the surviving spouse pension will equal 50% of your reduced monthly Basic Benefit.

Of course, if you decline surviving spouse pension coverage when you retire, your own pension will not be reduced; however, all payments from the Plan will stop upon your death.

In the event you have accepted the 5% reduction to provide a benefit for your spouse and your spouse dies before you, your full Basic Benefit will be restored after the Company is notified in writing of such death. If you become lawfully divorced, you should also notify the Company. You may be able to have your full Basic Benefit restored unless a qualified domestic relations order prevents it as explained under *"Your Right To Benefits."* Otherwise, your former spouse will continue to be eligible to receive the surviving spouse pension.

**Graded Minimum Benefit Supplement.** Effective January 1, 1994, if you die after retirement but before you reach age 62, your spouse is entitled to 50 percent of your graded minimum benefit supplement amount if:

  –you were receiving a graded minimum benefit supplement at the time of your death; and

  –you and your spouse were married when you first retired.

The benefit is payable up to the month following the month in which your 62nd birthday would have occurred. At that time, your spouse's pension will continue under the 50% Basic Benefit described above.

**If your employment terminates before you are eligible to retire** and you have vested rights under the Plan, the surviving spouse pension is paid automatically if you and your spouse were married at the time your vested pension becomes payable—unless you specifically request, in writing, and obtain your spouse's written consent to reject this coverage before your own pension begins..

If you do not so waive surviving spouse pension coverage, the monthly Basic Benefit payable during your lifetime will be reduced in order to provide the added coverage for your spouse. The amount your benefit will be reduced depends on the cost of the pre-retirement spouse's benefit protection and the difference in age between you and your spouse as outlined below.

| If your spouse is this many years YOUNGER than you | you will receive this percentage of your monthly vested benefit |
|---|---|
| 20 or more | 77% |
| 17– 19 | 78 |
| 14 –16 | 79 |
| 11– 13 | 81 |
| 8 – 10 | 82 |
| 5 – 7 | 84 |
| 2 – 4 | 85 |
| 0 – 1 | 87 |

| If your spouse is this many years OLDER than you | you will receive this percentage of your monthly vested benefit |
|---|---|
| 0 – 1 | 87% |
| 2 – 4 | 89 |
| 5 – 7 | 90 |
| 8 – 10 | 92 |
| 11 – 13 | 93 |
| 14 – 16 | 95 |
| 17 – 19 | 96 |
| 20 or more | 97 |

# Other Important Facts

## Employees Covered

The Reynolds Metals Company Pension Plan for Hourly Employees in effect as of June 1, 1993, is incorporated by reference in various labor agreements and applies to hourly Employees of the Company at the following locations:

> Alloys Plant
> Baton Rouge Plant
> Listerhill Reduction Plant
> Longview Cable Plant
> Longview Reduction Plant
> Louisville Plant #1
> Louisville Plant #3
> Louisville Plant #5
> Louisville Plant #14
> Louisville Plant #15
> Richmond North Plant
> Richmond South Plant
> Sherwin Plant
> St. Lawrence Reduction Plant
> St. Louis Plant

Hourly Employees at these locations automatically become Participants of the Plan on the first of the month after reaching age 21 and completing four calendar quarters of service. (Calendar quarters and service are defined below.) However, the period of employment before your formal Plan participation begins also counts as service under the Plan once you become a Participant.

## How Your Service Is Counted

Although service is generally expressed in terms of years in this booklet, Plan benefits are actually figured on the basis of calendar quarters of service (January-March, April-June, July-September, October-December).

In general, your service will consist of the total number of calendar quarters in which you receive any wages—including vacation pay—from the Company, figured from your last date of hire by the Company until your retirement. Also included are any calendar quarters in which you receive disability benefits under the Reynolds Employee Group Benefit Plan, workers compensation for injury occurring in the Company's employ or unemployment compensation benefits.

In addition, the following time will count as credited service:

- full-time duty with U.S. military or merchant marine services after May 1, 1940 (if you later return to your job within the time prescribed)

- leaves of absence after September 1, 1954, to conduct legitimate Union activities if so certified by the Union [**Note:** Special rules may apply in the event of full-time Union leave. Contact your Human Resources Office for information if this may affect you.]

- up to eight consecutive calendar quarters of absence starting on or after August 1, 1962, because of layoff (including layoff due to shut-down of plant, department or substantial portion thereof), accident or sickness.

Service is retained during absence due to layoff (including permanent shutdown) or disability lasting more than two years, if you return to work without losing your seniority. Remember, however, that only up to eight calendar quarters of absence will count as service.

In the case of absence caused by work-related disability lasting more than two years, your service is retained so long as you return to work or retire within 30 days following the period used in calculating your workers compensation payment.

Prior service will also count if you were rehired within six months after discharge if discharge occurred prior to January 1, 1976. If you are discharged or quit after January 1, 1976, and are rehired within 12 months, prior service will be counted.

*If you leave the Company on or after January 1, 1976, but before June 1, 1986,* with less than 10 years of service and are subsequently rehired, you will receive credit for your prior service, as long as :

- the period of time between termination and rehire is less than your length of prior service, and

- you complete a year of continuous service after rehire.

However, if your service has not, as of June 1, 1986, been lost under this rule  then the rules described below for Employees who leave the Company on or after June 1, 1986, will apply.

*If you leave the Company on or after June 1, 1986 and before January 1, 1989,* with less than 10 years of service and are subsequently rehired, you will receive credit for your prior service if:

- the period of time between termination and rehire is less than five years, and

- you complete a year of continuous service after rehire.

16

If the period of termination is more than five years, you will still receive credit for your prior service if the period of termination is less than your length of prior service and you complete a year of continuous service after rehire.

> **Example:** Suppose you leave the Company in 1987 after three years of service, and come back to work four years later. You would not lose your prior service, since you need at least a five-year absence before losing your prior service. If you had left the Company after five years of service and came back to work after a seven-year absence, you would lose your prior service because the number of years of absence is greater than five and is also greater than the number of your prior years of service.

*If you leave the Company on or after January 1, 1989,* with less than five years of service and are later rehired, you retain credit for your prior service provided:

• the period between your termination and rehire is less than five years, and

• you complete a year of continuous service after you are rehired.

Also, if you leave the Company on or after June 1, 1986, on account of the birth or adoption of a child, you may receive credit for your prior service if you return to work within six years instead of five as described above.

In addition, if you:

• left the Company before June 1, 1977,

• had at least one year of service when you left,

• had employment status on June 1, 1977, and

• returned to work before the period of absence exceeded your length of service when you left,

your period of service prior to the absence will be restored and will count as service in calculating the *amount* of your Reynolds pension, other than a deferred vested pension, when you retire. (The absence period will not, however, count as service in determining your *eligibility* for a pension.)

An Employee who left the Company before January 1, 1989 with 10 or more years of service and is later rehired will have his prior service restored. An Employee who leaves the Company after January 1, 1989 will have his prior service restored upon reemployment, provided he had five or more years of service when he left employment.

A *retiree* who is reemployed by the Company will have his pension discontinued. If you are reemployed and are covered under a labor agreement which incorporates this Plan by reference, you will accrue additional service while reemployed.

Pensions for certain Employees rehired on or after June 1, 1980, after an absence of three years or more will be calculated under the pension plan in effect when they left, unless the period of reemployment is five years or more. This rule applies to Employees who had previously retired (including retirement for disability) or had been eligible for a vested pension when they last left employment.

Also, special Plan rules apply to Employees who transfer to an affiliated Reynolds Company, or who become eligible for another Reynolds pension plan as a result of a change in Employee status. For more details about how your service is counted in these situations, check with your Human Resources Office.

## Applying For Benefits

Pension Plan benefits are not paid automatically. You must apply for them in writing before your intended retirement date. Appropriate pension application and election forms are available through your Human Resources Office. About nine months before you become eligible for 60-10 Retirement, you will receive an explanation of the surviving spouse pension payment method for Basic Benefits. Further details regarding your individual benefit amounts will also be furnished on request.

If your pension application is denied in whole or in part, you—or your beneficiary—will receive a written notice of the denial within 90 days after receipt of your application. This notice will explain:

• the specific reason for the denial,

• the specific Plan provisions on which the denial is based,

• any additional information required (such as spouse's data) needed to reconsider the application, and an explanation of why this information is needed, and

• an explanation of the Plan's appeal procedure.

Upon receipt of this denial notice, you may file an appeal with the Appeals Board established in accordance with the Plan document. The Plan provides that in the event of any differences between you and the Company as to your rights to a pension or the amount of your pension and agreement cannot be reached between the Company and the Union, an Appeals

Board has the authority to decide and resolve these differences. This Board is composed of three members: one appointed by the Union, one by the Company, and one by mutual agreement of the Union and Company members. A special appeals procedure is provided for differences concerning the existence of disability.

Your pension benefit may be payable retroactively in the event of a late application. In general, if you apply for pension payments for which you are eligible, after you leave the Company, benefits will be paid retroactively to the month following such date with two exceptions. If you retire under the 60-10 retirement rules and elect to defer pension payments until age 62, benefits payable before you apply will only be made retroactive to age 62. If you are eligible for a deferred vested pension, benefits payable before you apply will be made retroactive to the later of age 62 or your termination date.

## IRS Approval

The Plan is subject to continuing approval by the Internal Revenue Service and may be amended to comply with applicable regulations.

## Your Right to Benefits

Plan benefits are intended only for you and, in some cases, your surviving spouse. They cannot be attached or seized by any creditors except as specifically allowed by law.

Generally, your benefits under the Plan cannot be assigned to anyone else. However, the Employee Retirement Income Security Act of 1974 (ERISA) now provides that your benefits may be paid to a divorced spouse, child or other dependent under a qualified domestic relations order. A qualified domestic relations order is any judgment, decree or order (including certain property settlement agreements) that provides for child support, alimony, and/or marital property rights to a spouse, former spouse, child or other dependent under state domestic relations law (including a community property law).

Any pensions payable under this Plan shall continue to be payable, even if the Plan changes at some future date, and cannot be stopped or reduced except in accordance with the provisions of this Plan.

## Changing Or Ending The Plan

The Company expects to continue the Plan indefinitely, but reserves the right to change or end it

subject to the terms of the collective bargaining agreement. The Company's decision to change or end the Plan may be due to changes in federal or state laws governing retirement benefits, the requirements of the Internal Revenue Code or ERISA, or any other reason. A plan change may transfer plan assets and debts to another plan or split this Plan into two or more plans.

If the Company does make a change or ends the Plan, it may decide to set up a different plan providing similar or identical benefits.

If the Plan is ended, you will have a vested or nonforfeitable right to the accrued benefit you have earned. The amount of your benefit, if any, will depend on Plan assets, the terms of the Plan and the benefit guarantee of the Pension Benefit Guaranty Corporation (PBGC), a corporation established by Congress. Plan assets will be shared among Plan Participants and beneficiaries according to ERISA in the following order:

1) Certain annuities that Participants have been receiving or could have been receiving for three years prior to Plan termination.

2) Other vested benefits guaranteed by the PBGC.

3) Other vested benefits.

4) Remaining Plan benefits.

If the Plan is fully funded, you will receive your full accrued benefit.

Once your benefit has been determined, it may be paid in the form of one or more cash payments or an insurance company annuity contract which will pay you a monthly income. The exact form of payment may be set by law. If there is a choice, the plan administrator will decide the type and timing of payment.

After all benefits have been paid and legal requirements have been met, the Plan will turn over any remaining Plan money to the Company.

## Plan Insurance

Benefits under this Plan are insured by the Pension Benefit Guaranty Corporation (PBGC). Premiums for this insurance are paid by Reynolds. Generally, the PBGC guarantees most vested normal retirement age benefits, early retirement benefits, and certain disability and survivor's pensions. However, the PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a

CHJPDF - www.fasisc.com

plan has been in effect less than five years before it
terminates, or if benefits have been increased within
the five years before plan termination, the whole
amount of the plan's vested benefits or the benefit
increase may not be guaranteed. In addition, there is a
ceiling on the amount of monthly benefit that PBGC
guarantees, which is adjusted periodically.

For more information on the PBGC insurance
protection and its limitations, contact either the
Corporate Director, Compensation and Benefits,
Reynolds Metals Company, or the PBGC. Inquiries to
the PBGC should be addressed to the Office of
Communications, PBGC, 2020 K Street
N.W.,Washington, D.C. 20006. The PBGC Office of
Communications may also be reached by calling
(202) 254-4817.

# Pension Plan Facts

| | |
|---|---|
| **Plan Name** | The Reynolds Metals Company Pension Plan for Hourly Employees. |
| **Employer** | Reynolds Metals Company<br>6601 West Broad Street<br>P.O. Box 27003<br>Richmond, Virginia 23261<br>Phone: (804) 281-2000 |
| **Plan Sponsor/Administrator** | Reynolds Metals Company |
| **Agent For Legal Service** | Corporate Secretary, Reynolds Metals Company. Legal Process also may be served upon the Plan Trustee. |
| **Employer Identification No.** | 54-0355135 |
| **Plan Number** | 013 |
| **Type Of Plan** | Defined benefit pension plan |
| **Plan Funding** | The fund is administered by an independent trustee, in accordance with the formal trust agreement with the Company. Based on professional actuarial and legal advice, the Company makes periodic contributions to the Trust Fund to meet the expected cost of present and future Plan benefits. |
| **Plan Trustee** | The Chase Manhattan Bank, N.A., 1211 Avenue of the Americas, New York, New York 10036. |
| **Plan Year** | January 1 through December 31 |
| **Collective Bargaining** | The Plan is maintained pursuant to collective bargaining agreements between Reynolds Metals Company and various bargaining units which incorporate this Plan by reference. A copy of the applicable agreement is available for examination, or copies will be furnished to Participants upon written request to the plant Human Resources Office. |
| **Future Of The Plan** | Reynolds expects to continue the Plan indefinitely but reserves the right to make administrative changes to the Plan or amend or terminate the Plan at any time for any reason, subject to the provisions of the applicable collective bargaining agreements. If the Plan ends, Participants will be fully vested in their rights under the Plan to the extent funded and in the order of preference specified in the Plan and by law. |
| **Discretion Of The Plan Administrator** | Subject to the provisions of the applicable collective bargaining agreements, Reynolds Metals Company, in its capacity as the Plan Administrator, has the discretionary authority to interpret the terms of the Plan and to decide factual and other questions relating to the Plan and Plan benefits, including without limitation questions relating to eligibility for, entitlement to and payment of benefits. |
| **Classes Of Employees** | The pension plan described in this summary currently covers employees noted on the title page of this handbook. |
| **Your ERISA Rights** | As a participant in the Company's various benefit plans, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). Your ERISA rights are outlined in the *"Key Events"* section of this handbook. |

**ERISA Compliance**

The information contained under the *"Getting Started," "Key Events"* and *"Retirement"* tabs, comprise the Summary Plan Description for the *Reynolds Metals Company Pension Plan for Hourly Employees* as required by the Employee Retirement Income Security Act of 1974 (ERISA).

CtrlPDF - www.fwsio.com

B



The STATE OF TEXAS № 772

# Marriage License

## COUNTY OF

## REFUGIO

To all licensed or ordained Christian Ministers and Priests, Jewish Rabbis or persons who are officers of religious organizations and who are duly authorized by the organization to conduct marriage ceremonies, Justices of the supreme court, Judges of the court of criminal appeals, Justices of the courts of civil appeals, Judges of the district county and probate courts, Judges of the county courts at law, courts of domestic relations and juvenile courts, Justices of the peace and Judges of the Federal courts of this State,

## GREETING:

## YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE

## RITES OF MATRIMONY

Between Mr. Samuel Floyd Bonner

and Ms. Madeline Evon Bonner

and make due return to the Clerk of the County Court of said County within Thirty days thereafter, certifying your action under this License

Witness my official signature and seal of office at office in ___REFUGIO___ Texas, this, the 14th _____ day of ___March___ A. D. 19 83

Rebekah Scott _____ Clerk County Court

___REFUGIO___ County, Texas.

By ___Sandra Kruger___ Deputy

I hereby certify that on the ___Fifteenth___ day of ___March___ A. D. 19 83 I united in Marriage the parties above named

Witness my hand this 15 th day of March A. D. 19 83

Rev. John H Small _____ Signature of person performing ceremony

Baptist Minister _____ Title of person performing ceremony

517 Ashby _____ Address of person performing ceremony

County of Marriage:

Refugio County, Texas

Returned and filed for record the ___16th___ day of ___March___ 19 83 and recorded the ___23rd___ day of ___March___ 19 83

in Book ___N___ Page ___217___ Marriage Records of ___REFUGIO___ County

By ___Alba Ramirez___ Deputy ___Rebekah Scott___ County Clerk

C

NO. 4930

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE | X | IN THE DISTRICT COURT OF |
| | X | |
| OF LOIS JEAN BONNER | X | |
| | X | |
| AND SAMUEL FLOYD BONNER | X | |
| | X | REFUGIO COUNTY, TEXAS |
| AND IN THE INTEREST OF | X | |
| | X | |
| CHET KERWIN BONNER and | X | |
| CHAD KELVIN BONNER, Children | X | 24th JUDICIAL DISTRICT |

## DECREE OF DIVORCE

On the 22nd day of September, 1975, trial on the merits
was held in this cause.

The Petitioner appeared in person and by attorney and announced
ready for trial.  The Respondent appeared in person.

The Court, after examining the pleadings and listening to
the evidence and argument of counsel, finds that it has jurisdiction
over this cause and the parties and that Petitioner's Original
Petition for Divorce has been on file in this Court for at least
60 days.

The Court finds that at the time this suit was filed,
Petitioner had been a domiciliary of this state for the preceding
six months and a resident of this county for the preceding 90 days.

No jury having been demanded by either of the parties, all
matters in controversy, including all questions of fact and of law,
were submitted to the Court.  The Court is of the opinion that the
material allegations in Petitioner's original petition for divorce
are substantially correct and have been proved by full and
satisfactory evidence.  The Court finds that a divorce should be
granted.

1.

IT IS THEREFORE ORDERED that the bonds of matrimony between the Petitioner LOIS JEAN BONNER and Respondent SAMUEL FLOYD BONNER be and are hereby dissolved, and a decree of divorce is hereby granted to LOIS JEAN BONNER.

The Court finds that there were born to or adopted by the parties of this marriage the following children now under the age of eighteen (18) years:

CHET KERWIN BONNER, a male, born December 16, 1959; and

CHAD KELVIN BONNER, a male, born August 25, 1963.

The Court finds that the best interest of the children will be served by appointing LOIS JEAN BONNER, as managing conservator, to have the rights, duties and responsibilities set forth below.

IT IS THEREFORE ORDERED AND DECREED that LOIS JEAN BONNER be and is hereby appointed managing conservator of the children.

IT IS FURTHER ORDERED AND DECREED that the managing conservator shall have all the rights, privileges, duties and powers of a parent, to the exclusion of the other parent, subject to the rights, privileges, duties and powers of a possessory conservator as named in this order.

The Court further finds that the best interest of the children will be served by appointing SAMUEL FLOYD BONNER as a possessory conservator of the children.

IT IS THEREFORE ORDERED AND DECREED that SAMUEL FLOYD BONNER be and is hereby appointed possessory conservator of the children.

IT IS FURTHER ORDERED AND DECREED that the possessory conservator shall have the possession of the children as follows:

and is directed to return children to the home of the managing conservator by Six O'Clock P.M. the following Sunday, starting on the 3rd day of October, 1975.

2.

IT IS FURTHER ORDERED AND DECREED that the possessory conservator shall have the following rights, privileges, duties and power during the period of possession:

    a. the duty of care, control, protection and reasonable discipline of the child;

    b. the duty to provide the child with clothing, food and shelter;

    c. the power to consent to medical and surgical treatment during an emergency involving immediate danger to the health and safety of the child.

The Court, having considered the circumstances of the parents, finds that SAMUEL FLOYD BONNER is obligated to support the children and is able to make child support payments and that payments of support would be in the best interest of the children.

IT IS THEREFORE ORDERED that SAMUEL FLOYD BONNER pay child support to LOIS JEAN BONNER in the amount of $88.50 per child per month with the first payment being due on the 30th day of October, 1975, and a like amount on each month thereafter until the child with respect to whom payments are made shall attain the age of eighteen. Payments are to be made through the District Clerk's Office.

The Court finds that the parties have entered into an agreement for the division of their community property. Both parties have asked the Court to approve the agreement, which the Court finds to be fair and reasonable.

IT IS THEREFORE ORDERED that the community property agreement entered into by Petitioner and Respondent and filed herein be and is hereby approved and incorporated into this Decree by reference.

The Court finds that it was necessary for Petitioner to secure the services of ROBERT GEISSLER, a licensed attorney, to preserve and protect Petitioner's rights in a divorce involving the parent-child relationship. The Court finds that a fee of $125.00 is reasonable and proper fee for the services rendered in the part of this action affecting the parent-child relationship.

IT IS THEREFORE ORDERED that ROBERT GEISSLER, a licensed attorney, by and is hereby awarded judgment in the amount of $125.00 for legal services rendered. The Judgment is awarded against SAMUEL FLOYD BONNER for which let exectuion issue if not timely paid.

All costs of court expended in this cause are hereby adjudged against Petitioner.

Execution shall issue for all of the above if not timely paid.

Signed and entered this 30 TH day of _September_.
1975.

_____
JUDGE


APPROVED:

_____
Attorney for Petitioner

4.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LOIS JEAN CAGE                        §
                                      §
vs.                                   §      CIVIL ACTION NO. C-00-093
                                      §
MADELINE E. BONNER,                   §
THE ESTATE OF SAMUEL BONNER           §
AND REYNOLDS-METALS COMPANY           §

## ORDER

On this day came before this Court Defendant Reynolds Metals Company's Motion for Summary Judgment. The Court, having considered said motion, and the pleadings, exhibits, affidavits and other papers on file herein, is of the opinion and finds that Defendant's motion is meritorious and should be granted. It is therefore,

ORDERED, ADJUDGED and DECREED that Defendant Reynolds Metals Company's Motion for Summary Judgment is in all things hereby granted and that Plaintiff's actions be dismissed in its entirety.

SIGNED this _____ day of _____, 2000.


_____
UNITED STATES DISTRICT JUDGE